UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                     :

IN RE:                                                        :

MOTORS LIQUIDATION COMPANY,          :      20-CV-3093 (JMF)
    *f/k/a General Motors Corporation*, et al.,    :

                                   Debtors.    :      OPINION AND ORDER

GENERAL MOTORS LLC,                       :

                                Appellant,   :

        -v-                                       :

ROBERT RANDALL BUCHANAN, *individually and as*  :
*Administrator of the Estate of Glenda Marie Buchanan*,  :

                                Appellee.   :

-------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In June 2009, General Motors Corp. ("Old GM") filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. As part of the bankruptcy proceedings that followed, General Motors LLC ("New GM") purchased substantially all of the assets of Old GM but assumed only some of its liabilities. In the years since, there has been much litigation over whether claims brought against New GM in connection with vehicles manufactured by Old GM can proceed in light of the Bankruptcy Court's order approving the sale. This is another such case. It arises on appeal from an order of the Bankruptcy Court (Martin Glenn, Bankruptcy Judge) granting in part and denying in part a motion that New GM had filed to enjoin Robert Randall Buchanan from prosecuting certain claims in Georgia state court. For the reasons that follow, the order of the Bankruptcy Court is affirmed.

**LEGAL BACKGROUND**

The Court begins with a brief summary of the legal background that informs this appeal. As part of its 2009 bankruptcy proceedings, Old GM filed a motion to sell substantially all of its assets "free and clear" of most of its liabilities to New GM pursuant to 11 U.S.C. § 363. In an order entered on July 5, 2009 (the "Sale Order"), the Bankruptcy Court granted Old GM's motion and approved the sale (the "363 Sale"). *See In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009), *aff'd sub nom. Campbell v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 428 B.R. 43 (S.D.N.Y. 2010), *and aff'd sub nom. Parker v. Motors Liquidation Co.* (*In re Motors Liquidation Co.*), 430 B.R. 65 (S.D.N.Y. 2010). Five years later, New GM revealed that General Motors vehicles had, for years, been manufactured with a defective ignition switch, and an avalanche of litigation followed. *See generally In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 216-19 (S.D.N.Y. 2019); *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 (JMF), 14-MC-2543 (JMF), 2016 WL 3920353, at *3-6 (S.D.N.Y. July 15, 2016). Not surprisingly, that litigation has resulted in a host of decisions — from the Bankruptcy Court, this Court, and the Second Circuit — addressing the scope of the liabilities that New GM assumed from Old GM and, by extension, the species of claims and allegations that litigants can bring against New GM consistent with federal bankruptcy law.[1]

---

[1] *See, e.g.*, *In re Motors Liquidation Co.* ("*December 2015 Judgment*"), No. 09-50026 (REG), 2015 WL 11070293 (Bankr. S.D.N.Y. Dec. 4, 2015), *judgment entered*, 549 B.R. 607 (Bankr. S.D.N.Y. 2016); *In re Motors Liquidation Co.* ("*November 2015 Decision*"), 541 B.R. 104 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part* ("*May 2018 Decision*"), 590 B.R. 39 (S.D.N.Y. 2018), *aff'd sub nom. Those Certain Post-Closing Accident Plaintiffs Represented By Butler Wooten & Peak LLP, Denney & Barrett, P.C., Hilliard Martinez Gonzales L.L.P., & Turner & Assocs., P.A v. Gen. Motors LLC* (*In re Motors Liquidation Co.*) ("*November 2019 Decision*"), 943 F.3d 125 (2d Cir. 2019), *and aff'd sub nom. Reichwaldt v. Gen. Motors LLC* (*In re Motors Liquidation Co.*), 792 F. App'x 28 (2d Cir. 2019) (summary order), *and aff'd sub nom. Pillars v. Gen. Motor LLC* (*In re Motors Liquidation Co.*), 957 F.3d 357 (2d Cir. 2020) (per curiam); *In re Motors Liquidation Co.*, 529 B.R. 510 (Bankr. S.D.N.Y. 2015), *aff'd in part,*

2

To the extent relevant here, this jurisprudence has yielded several important principles:

- *First*, because the Sale Order granted exclusive jurisdiction to the Bankruptcy Court "to enforce and implement" its provisions, *In re Motors Liquidation Co.*, No. 09-50026 (MG), 2018 WL 1801234, at *6 (Bankr. S.D.N.Y. Apr. 13, 2018), the Bankruptcy Court plays a "gatekeeper" role, determining "what claims and allegations should get through the gate, under the Sale Order," *In re Motors Liquidation Co.* ("*Pitterman*"), 568 B.R. 217, 222 (Bankr. S.D.N.Y. 2017) (internal quotation marks omitted), *aff'd in relevant part*, *May 2018 Decision*, 590 B.R. 39.

- *Second*, as part of the 363 Sale, New GM assumed certain Product Liabilities (also known as "Assumed Liabilities") for Old GM vehicles, defined as "liabilities to third parties for death, personal injury, or other injury to persons or damage to property caused by motor vehicles . . . manufactured, sold or delivered by Old GM . . . arising out of accidents or incidents occurring on or after the closing date of the 363 Sale . . . [i.e.,] July 10, 2009." *In re Motors Liquidation Co.* ("*July 2017 Decision*"), 571 B.R. 565, 569 (Bankr. S.D.N.Y. 2017) (cleaned up), *aff'd in part, vacated in part*, *May 2018 Decision*, 590 B.R. 39. Among these claims are those based on Old GM's duty to warn. *See Pitterman*, 568 B.R. at 229.

- *Third*, New GM is *not* liable for punitive damages with respect to such claims because "punitive damages are not an Assumed Liability in the Sale Agreement, and the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability." *November 2019 Decision*, 943 F.3d at 133.

- *Fourth*, "Independent Claims" — i.e., "claims based on New GM's *own* post-closing wrongful conduct" — are "not claims that are based on a right to payment that arose before the filing of [the bankruptcy] petition or that are based on pre-petition conduct" and, therefore, "these claims are outside the scope of the Sale Order's 'free and clear' provision." *Elliott*, 829 F.3d at 157 (emphasis added).[2] Because true Independent Claims are "based solely on *New GM's alleged wrongful conduct*," it is "not acceptable . . . to base allegations on generalized knowledge of both Old GM and New GM." *Pitterman*, 568 B.R. at 231. Thus, "[t]o pass through the bankruptcy gate, an Independent Claim must clearly allege specific conduct of New GM upon which it is based. Simply adding 'and GM LLC' to paragraphs of a complaint concerning Old GM conduct is not enough to pass through the gate as an Independent

---

*vacated in part, rev'd in part sub nom. Elliott v. Gen. Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135 (2d Cir. 2016).

2   Strictly speaking, the Second Circuit's holding in *Elliott* concerning Independent Claims directly pertained only to plaintiffs alleging certain ignition switch defects. Nevertheless, its reasoning applies equally to plaintiffs whose claims do not arise from defective ignition switches, including Buchanan here. *See May 2018 Decision*, 590 B.R. at 60-61.

    Claim." *In re Motors Liquidation Co.* ("*Reichwaldt I*"), 576 B.R. 313, 322 (Bankr. S.D.N.Y. 2017), *aff'd May 2018 Decision*, 590 B.R. 39.

- *Fifth*, as the gatekeeper, "[t]he role of the Bankruptcy Court" in the first instance — and of this Court on appeal — "is not to determine whether [a complaint] is properly pleaded as a matter of state law or whether [an action] should succeed on its merits." *Pitterman*, 568 B.R. at 222. Instead, the Bankruptcy Court's role is simply "to analyze whether the [complaint] may pass through the bankruptcy gate." *Reichwaldt I*, 576 B.R. at 320. "If a complaint violates an enforceable provision of the Sale Order, it may not proceed as currently drafted. If it does not violate the Sale Order, the complaint 'passes through the gate' for the appropriate nonbankruptcy court to decide whether it is actionable." *Pitterman*, 568 B.R. at 222.

  The decisions of the Bankruptcy Court and this Court in *Pitterman* provide a helpful illustration of how these principles apply to claims of the sort at issue in this case. In that case, the plaintiffs had brought several claims against New GM, including a failure-to-warn claim under Connecticut law based on New GM's own post-363 Sale conduct. 568 B.R. at 221. The Bankruptcy Court allowed these claims to proceed as Independent Claims to the extent they were truly "based solely on New GM's post-closing wrongful conduct." *Id.* Although the then-operative complaint contained some allegations that impermissibly failed to distinguish between Old GM and New GM, the Bankruptcy Court left it to the non-bankruptcy court hearing the underlying litigation to decide in the first instance whether to allow the plaintiffs leave to amend. *Id.* at 231. The Connecticut court granted leave, and the case resulted in a verdict in favor of the plaintiffs following trial. *See May 2018 Decision*, 590 B.R. at 52-53. New GM appealed the Bankruptcy Court's decision to let the plaintiffs' failure-to-warn claim through the bankruptcy gate, arguing that the plaintiffs were improperly "attempt[ing] to 'bootstrap' the knowledge or conduct of Old GM onto purportedly Independent Claims." *Id.* at 61. This Court rejected that argument, noting that the operative complaint alleged that, "[d]espite information and knowledge available and known to [New GM], including knowledge of numerous 'rollaway' incidents caused by the defects described herein . . . , [New GM] took no steps after June 2009 to directly

4

notify and/or warn owners or the public of these defects." *Id.* The Court explained that this was sufficient to state an Independent Claim because, "[o]n its face, . . . the amended complaint alleges that New GM had independent knowledge of the alleged defect *after* the Closing Date of the 363 Sale and that its duty to warn arose from that knowledge." *Id.*

## FACTUAL BACKGROUND

Robert Randall Buchanan is the Administrator of the Estate of Glenda Marie Buchanan, his deceased wife. FAC ¶¶ 2, 46.[3] Mrs. Buchanan purchased a used 2007 Chevrolet Trailblazer — manufactured by Old GM — in February 2011. *See id.* ¶¶ 5, 16, 26. On November 10, 2014, Mrs. Buchanan lost control of her Trailblazer while driving and suffered fatal injuries in a single-vehicle accident in Paulding County, Georgia. *See id.* ¶¶ 1, 28-30. Buchanan, as Administrator of Mrs. Buchanan's Estate, commenced an action against New GM in Georgia state court in May 2016. *See* JA 224, 231; *In re Motors Liquidation Co.* ("*Buchanan*"), 613 B.R. 570, 577 (Bankr. S.D.N.Y. 2020). He alleges that Mrs. Buchanan's Trailblazer was one of many cars manufactured by Old GM that contained defective steering wheel angle sensors ("SWAS"), a critical component in the vehicle's electronic stability controls — known as "StabiliTrak" — and that these defects significantly increased the risk of a fatal rollover crash. *See* ECF No. 8 ("Buchanan Opp'n"), at 17-18; FAC ¶¶ 11, 17-19, 44. As part of discovery in the state court proceedings, the Georgia trial court authorized a deposition of Mara Barra, New GM's Chief Executive Officer. New GM sought a protective order opposing Barra's deposition, arguing that

---

[3] "FAC" refers to the First Amended Complaint, which is contained at pages 210-22 of the Joint Appendix, ECF No. 7-1 ("JA").

5

it should not be allowed because it pertains only to Buchanan's punitive damages claim and that claim is barred by the Sale Order. *Buchanan*, 613 B.R. at 577-78.[4]

On January 29, 2020, New GM sent Buchanan a letter asserting that those portions of his complaint that alleged or suggested that New GM performed actions relating to an Old GM vehicle before the 363 Sale and any requests for punitive damages against New GM based on Old GM conduct were barred by the Sale Order. JA 238-41. On January 31, 2020, Buchanan filed the First Amended Complaint to address the deficiencies identified by New GM. *Buchanan*, 613 B.R. at 578. Four days later, however, New GM filed a motion to enforce the Sale Order before the Bankruptcy Court, arguing that the First Amended Complaint "seeks to impermissibly hold New GM liable for punitive damages based on Old GM conduct." *Id.* at 579; *see* JA 1-24. More specifically, New GM argued that while the First Amended Complaint "purported to add an Independent Claim based on New GM's failure to warn Mrs. Buchanan about an alleged defect in the Vehicle, that Independent Claim is not based solely on specific and identifiable New GM conduct." *Buchanan*, 613 B.R. at 579. That is because the First Amended Complaint "is not based on any expressly stated New GM volitional conduct" and did not identify a "post-363 Sale event because New GM had no relationship to Mrs. Buchanan (it did not manufacture, design or sell the [Trailblazer])." *Id.* at 579-80. Thus, according to New GM, the First Amended Complaint "is nothing more than a failure to warn claim that Old GM allegedly had as the manufacturer and original seller of the [Trailblazer]" — that is, a "successor liability-type claim" for which "New GM does not have punitive damage liability." *Id.* at 580. Moreover, even "assuming Old GM had a failure to warn obligation, that obligation is part of the

---

[4] The Georgia court order authorizing Barra's deposition is currently stayed pending the outcome of an appeal by New GM. ECF No. 7 ("New GM Br."), at 14 n.11.

assumed Product Liability in which New GM is potentially liable for only compensatory, and not punitive, damages." *Id*. New GM sought to enjoin Buchanan from further prosecuting the lawsuit in Georgia state court until the deficiencies New GM identified were remedied. *Id.*[5]

Bankruptcy Judge Martin Glenn framed "the narrow question presented" as "whether the [First Amended Complaint's] failure to warn claim against New GM and corresponding punitive damages request may pass through the bankruptcy gate." *Buchanan*, 613 B.R. at 583. Judge Glenn concluded they could, subject to certain amendments to the First Amended Complaint. *Id.* Judge Glenn first determined that the First Amended Complaint stated an Independent Claim, explaining that it "contains specific allegations that New GM had independent knowledge of the SWAS defect post-Sale and failed to warn plaintiffs, like the Buchanans, about that defect." *Id.* at 584. "Like the allegations in the Pitterman Plaintiffs' amended complaint," he continued, "the Buchanan Amended Complaint alleges that New GM had post-Sale independent knowledge inherited from Old GM employees of the alleged defect, and its duty to warn arose from that knowledge." *Id.* Judge Glenn did note that "there are certain allegations in the Buchanan Amended Complaint that may not be used to support a failure to warn claim against New GM, seeking punitive damages against New GM based on its own post-sale conduct . . . [because they] impermissibly conflate Old GM and New GM conduct." *Id.* at 585. But he concluded that the First Amended Complaint could be amended to remedy these deficiencies. *Id.* Judge Glenn also rejected "New GM's argument that the [*November 2019 Decision*] forecloses used car

---

[5] During the proceedings before the Bankruptcy Court, Buchanan submitted a proposed Second Amended Complaint, which the Bankruptcy Court declined to consider. JA 505-06. Buchanan later filed the Second Amended Complaint, with redactions, in the state court proceedings. *Id.* at 599-615. Buchanan submitted an unredacted copy of the same via email to this Court, although it does not appear to be on the docket. Although both parties cite to the Second Amended Complaint in their briefs, and a redacted copy of the pleading is included in the Joint Appendix, this Court declines to consider it in the first instance.

purchasers, like Buchanan, from seeking punitive damages against New GM for Independent Claims alleging New GM's post-Sale knowledge and conduct." *Buchanan*, 613 B.R. at 586. "[T]o the extent Buchanan's failure to warn claim is based on New GM conduct alone, supported by specific allegations of inherited knowledge of Old GM," he explained, "punitive damages may be permissible if permitted by Georgia state law." *Id.* Thus, Judge Glenn concluded that the First Amended Complaint did not run afoul of the Sale Order (subject to certain specifically identified amendments to select paragraphs). *Id.* at 586-87.

Thereafter, New GM timely appealed. ECF No. 1.

## DISCUSSION

The Court reviews the Bankruptcy Court's findings of fact for clear error and reviews mixed questions of fact and law and legal conclusions, including the Bankruptcy Court's constructions of bankruptcy documents and orders, *de novo*. *See, e.g.*, *Goldman, Sachs & Co. v. Esso Virgin Islands, Inc.* (*In re the Duplan Corp.*), 212 F.3d 144, 151 (2d Cir. 2000); *Gabauer v. Chemtura Corp.* (*In re Chemtura Corp.*), 505 B.R. 427, 429-30 (S.D.N.Y. 2014). Applying these standards here, the Court affirms the judgment of the Bankruptcy Court, substantially for the reasons stated in Judge Glenn's thoughtful and well-reasoned opinion. Indeed, as Judge Glenn observed during a hearing, this case is "virtually on all fours with *Pitterman*," JA 524, in which Judge Glenn and this Court held that a failure-to-warn claim was not barred by the Sale Order. Like the complaint at issue in *Pittterman*, the complaint at issue here "alleges that New GM had independent knowledge of the alleged defect *after* the Closing Date of the 363 Sale and that its duty to warn arose from that knowledge." *May 2018 Decision*, 590 B.R. at 61. Specifically, the First Amended Complaint alleges that New GM touted the safety of its StabiliTrak system after the closing date; that a specifically identified New GM employee was

8

aware of problems with the SWAS, having learned of them in the course of his prior employment at Old GM; and that New GM nevertheless failed to warn drivers of vehicles with these flaws of the potential risks.  *See* FAC ¶¶ 18, 22-23, 25, 27.  Thus, like the complaint at issue in *Pitterman*, the First Amended Complaint "alleges that New GM had post-Sale independent knowledge inherited from Old GM employees of the alleged defect, and its duty to warn arose from that knowledge."  *Buchanan*, 613 B.R. at 584.

In challenging this conclusion, New GM appears to argue that a duty-to-warn claim premised on a New GM employee's knowledge, where that knowledge was acquired in the course of employment at Old GM, is necessarily an Assumed Liability and cannot be an Independent Claim.  New GM Br. 22.  But that is not the case — as rulings in these proceedings have long made clear.  As Bankruptcy Judge Robert Gerber explained in the *December 2015 Judgment*: "With respect to Independent Claims, knowledge of Old GM may be imputed to New GM, if permitted by nonbankruptcy law, to the extent such knowledge was 'inherited' from Old GM if such information . . . was actually known to a New GM employee (*e.g.,* because it is the knowledge of the same employee or because it was communicated to a New GM employee) . . . ."  2015 WL 11070293, at *1 (footnote omitted); *accord November 2015 Decision*, 541 B.R. at 115 ("New GM would have to live with the knowledge its personnel had from the earliest days they began to serve New GM . . . .  [I]n actions alleging . . . Independent Claims . . . New GM's knowledge may be imputed to it starting with the first day of its existence.  The Court's rulings permit allegations in pleadings starting with 'New GM knew . . .' or 'New GM was on notice that . . . .'  Plaintiffs asserting such claims may as a matter of this Court's gatekeeper role then complete the sentences as they see fit."  (internal quotation marks omitted)).

9

Noting that the First Amended Complaint does not allege a direct relationship between New GM and either Mrs. Buchanan or her vehicle, New GM also questions the basis for any legal duty to warn. *See* New GM Br. 34-35. New GM may well prove to have a valid point. But, as this Court explained in *Pitterman*, "that is a question of *nonbankruptcy* law for the [Georgia state courts] to decide in the first instance (subject to appellate review)," not a basis to close the bankruptcy gate in Buchanan's face. *May 2018 Decision*, 590 B.R. at 61. Buchanan's request for punitive damages does not affect this conclusion. The *November 2019 Decision*, which held that punitive damages cannot be imposed on New GM based on a theory of successor liability, was based on an interpretation of the agreements governing the 363 Sale. 943 F.3d at 127. But Independent Claims, by definition, fall "outside the scope" of these agreements. *Elliott*, 829 F.3d at 157. Here, Buchanan "expressly and unequivocally does not seek punitive damages against New GM predicated on Old GM conduct." Buchanan Opp'n 24. Instead, he does so "solely in connection with his independent claim for New GM's failure to warn, which is based solely on New GM's knowledge (including knowledge acquired from Old GM) and wrongful conduct." *Id.*; *see Buchanan*, 613 B.R. at 584-86.[6]

---

[6] In its reply brief, New GM argues that Buchanan is either judicially estopped from asserting that his theory of recovery is an Independent Claim or that he should be held to a judicial admission that his request for punitive damages is based on Old GM conduct. *See* ECF No. 10 ("New GM Reply"), at 7-12. But New GM did not make this argument in its initial brief, and it is well established that "arguments not made in an appellant's opening brief are waived even if the appellant . . . raised them in a reply brief." *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005); *accord Farmer v. United States*, Nos. 15-CV-6287 (AJN), 12-CR-758 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived . . . ." (collecting cases)). Accordingly, the Court declines to consider the argument.

## CONCLUSION

The Court has reviewed all of New GM's remaining arguments and finds them to be without merit. Accordingly, and substantially for the reasons provided by Judge Glenn, the order of the Bankruptcy Court is AFFIRMED. The Clerk of Court is directed to close 20-CV-3093.

SO ORDERED.

Dated: March 22, 2021
      New York, New York

                                         JESSE M. FURMAN
                                         United States District Judge